UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDRE HOLLY,

                     Plaintiff,

    v.

ROBERT CUNNINGHAM and STACIE
BENNETT,

                     Defendants.

Case No. 15-CV-284 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Andre Holly
Middletown, NY
*Pro Se Plaintiff*

Yan Fu, Esq.
New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Andre Holly ("Plaintiff"), proceeding pro se, brings this Complaint against

Superintendent Robert Cunningham ("Cunningham") and Education Supervisor Stacie Bennett

("Bennett") (collectively, "Defendants"), alleging that Defendants violated his rights under Title

II and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and

§ 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.  Before the

Court is Defendants' Motion To Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Motion").  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The factual allegations that follow are derived from Plaintiff's Complaint, appended submissions, and certain documents incorporated into the Complaint by reference.[1]  While the Court will sometimes refer to Plaintiff's contentions as "alleged," it nonetheless treats them as true for purposes of the instant Motion.  During the events giving rise to this Action, Plaintiff was incarcerated at Woodbourne Correctional Facility ("Woodbourne"), in the custody of New York State Department of Corrections and Community Supervision ("DOCCS").  (Compl. §§ I.A, II.A (Dkt. No. 2).)[2]

On March 6, 2013, Plaintiff filed a grievance regarding Woodbourne's alleged lack of academic programming and properly trained staff to serve visually impaired inmates.  (*Id.* Ex. A (Inmate Grievance Complaint); *see also* Compl. §§ II.D, IV.D–E.)  This grievance was referred to Bennett, who responded in a memorandum to the supervisor of the Inmate Grievance Program that "[a]cademic programming is available for visually impaired offenders" and that Plaintiff was on the appropriate waiting list.  (Compl. Ex. A (Education Department Memorandum).)  Plaintiff appealed, (Compl. § IV.E), and Cunningham issued a decision stating that Plaintiff was "on the

---

[1] In light of the Complaint's express mention of his prior Article 78 proceeding, (*see* Compl. §§ IV.G, VI.B (Dkt. No. 2)), the Court properly considers Plaintiff's petition and the related judgment as incorporated by reference, *see Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (explaining that a court may consider "documents appended to the complaint or incorporated in the complaint by reference").  The Court also may take judicial notice of both documents as matters of public record.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . .").

[2] Plaintiff was released from DOCCS custody in June 2015, during the pendency of this Action.  (*See* Dkt. Nos. 11, 13.)

appropriate waiting list" and that "the academic program [was] prepared to address the needs of visually impaired offenders," (*id.* Ex. A (Decision of Superintendent)).

Plaintiff subsequently commenced an Article 78 proceeding in New York State Supreme Court, Albany County, naming Cunningham as the respondent ("Article 78 Petition").  (Decl. of Yan Fu in Supp. of Mot. ("Fu Decl.") Ex. A ("Petition") (Dkt. No. 17); *see also* Compl. §§ IV.G, VI.B.)[3]  According to the Article 78 Petition, Woodbourne failed to offer programs and properly trained staff to meet the needs of visually impaired inmates, (Petition ¶ 5), thereby denying those inmates "the opportunity to receive certain benefits that are offer[ed] by DOCCS," such as the Limited Credit Time Allowance ("LCTA"), (*id.* ¶ 6).[4]  As an individual with visual impairment, (*id.* ¶ 13), Plaintiff alleged that "this neglect" violated his rights under the ADA and DOCCS Directive 2612, which concerns inmates with sensorial disabilities, (*id.* ¶¶ 6, 9).  The state court, however, found that Plaintiff had "not submitted any evidence supporting his assertions [that Woodbourne lacked the capability to address his academic needs]."  (Fu Decl. Ex. B ("Judgment") 5.)  Because Plaintiff did not demonstrate that Cunningham's denial of his grievance was arbitrary and capricious or without a rational basis, the court dismissed the Article 78 Petition.  (*Id.* at 5–6.)

---

[3] Cunningham had originally moved to dismiss the Petition on the basis that Plaintiff did not exhaust his administrative remedies in failing to appeal to the Central Office Review Committee ("CORC").  (*See* Fu Decl. Ex. B ("Judgment") 2.)  Plaintiff opposed the motion, submitting evidence that he had attempted to appeal Cunningham's decision but that his appeal had not been sent to CORC due to mishandling by a grievance representative at Woodbourne.  (*See id.* at 3.)  Based on this evidence, Cunningham withdrew the motion to dismiss and submitted an answer to the Article 78 Petition.  (*See id.*)

[4] In New York, "certain inmates . . . may be eligible to earn a six-month Limited Credit Time Allowance (LCTA) against their sentences," provided, inter alia, "that they have achieved certain significant programmatic accomplishments . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 290.1.

B.  Procedural Background

Plaintiff commenced the instant Action on January 14, 2015.  (Dkt. No. 2.)  Pursuant to a scheduling order adopted by the Court on July 23, 2015, (Dkt. No. 14), Defendants filed their Motion and supporting papers on September 4, 2015, (Dkt. Nos. 15–17).  Plaintiff has not submitted any response.

II.  Discussion

A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

4

common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d

601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

According to the Complaint, Woodbourne does not have programs or properly trained staff to "serve and support" visually impaired inmates, which thereby prevented Plaintiff from earning six months off of his sentence pursuant to the LCTA.  (Compl. § II.D.)  Plaintiff alleges that Defendants' actions in failing to provide the necessary academic programming violated his rights under Title II and Title III of the ADA and the Rehabilitation Act.  (*Id.*)[5]  He seeks monetary damages as result.  (*Id.* § V.)

1.  Title II of the ADA and Section 504 of the Rehabilitation Act

Defendants first argue that Plaintiff cannot bring ADA or Rehabilitation Act claims for monetary damages against Defendants in their individual *or* official capacities.  (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 1, 5–8 (Dkt. No. 16).)[6]  Title II of the ADA

---

[5] To the extent Plaintiff seeks to state a claim based on Defendants' alleged non-compliance with Directive 2612, any such claims would necessarily fail as a matter of law.  It "is settled that the failure to follow a [DOCCS] Directive or prison regulation does not give rise to a federal constitutional claim."  *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002); *see also McAllister v. Call*, No. 10-CV-610, 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A [§] 1983 claim is not the 'appropriate forum' in which to seek review of a violation of a prison regulation.").

[6] Defendants also argue that any such claims are barred by the doctrine of collateral estoppel, (*see* Defs.' Mem. 1, 8–10), which provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit," *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). While "a judgment in an Article 78 proceeding precludes relitigation of those issues already decided in that judgment," *Watkins v. Annucci*, No. 02-CV-4475, 2006 WL 722005, at *4 (S.D.N.Y. Mar. 22, 2006); *accord DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (holding that a determination in an Article 78 proceeding was entitled to collateral estoppel effect); *Lawtone-Bowles v. City of N.Y., Dep't of Sanitation*, 22 F. Supp. 3d 341, 349 (S.D.N.Y. 2014) (applying collateral estoppel where "[t]he issues underlying the plaintiff's ADA claims [were]

provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Supreme Court has held that Title II extends to inmates in state prisons.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).  Similarly, § 504 of the Rehabilitation Act, which also has been held to apply to state prisoners, *see, e.g.*, *Keitt v. New York City*, 882 F. Supp. 2d 412, 425 (S.D.N.Y. 2011), protects a "qualified individual with a disability" from exclusion of participation, denial of benefits, or subjection to discrimination "under any program or activity receiving Federal financial assistance" based on the individual's disability, 29 U.S.C. § 794(a).[7]

---

identical to issues that were actually and necessarily decided in the plaintiff's Article 78 proceeding"), Defendants here have not met their "burden of showing that the identical issue was previously *decided*," *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (emphasis added). Though the claims presented in Plaintiff's Complaint directly parallel the issues raised in his Article 78 Petition, (*compare, e.g.*, Compl. § II.D, *with* Petition ¶ 5), the state court did not find that Woodbourne offered adequate programs for visually impaired inmates; rather, this prior decision turned on the lack of evidence submitted by Plaintiff and held that he had not demonstrated that Cunningham acted arbitrarily or irrationally, (*see* Judgment 5).  Thus, it cannot be said that the issues underlying Plaintiff's Complaint—namely, whether Defendants violated his rights under the ADA and Rehabilitation Act—were "actually and necessarily decided" in the prior Article 78 proceeding.  *Colon*, 58 F.3d at 869; *see also Karamoko v. N.Y.C. Hous. Auth.*, 170 F. Supp. 2d 372, 379 (S.D.N.Y. 2001) (holding that collateral estoppel did not apply where, in the prior Article 78 proceeding, "[t]he Appellate Division did not decide any issues of fact" but "merely rejected [the] plaintiff's contention").

[7] Because the ADA and Rehabilitation Act "impose identical requirements," *Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999), courts analyze such claims together, *see, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010); *see also Hilton v. Wright*, 928 F. Supp. 2d 530, 557 (N.D.N.Y. 2013) ("When brought together, claims under Title II and [§] 504 may be treated identically." (citing *Henrietta*, 331 F.3d at 272)).

<u>a.  Individual Capacity Claims</u>

It is well settled that "[i]ndividuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act."  *Keitt*, 882 F. Supp. 2d at 426 (citing *Harris v. Mills*, 572 F.3d 66, 72–73 (2d Cir. 2009)); *see also Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.").  Therefore, any such claims against Cunningham and Bennett must be dismissed.

<u>b.  Official Capacity Claims</u>

"Whether individuals can be sued for damages under the ADA or Rehabilitation Act in their *official capacities*, however, is unsettled in th[e] [Southern] District."  *Jones v. Ng*, No. 14-CV-1350, 2015 WL 998467, at *10 n.20 (S.D.N.Y. Mar. 5, 2015) (emphasis added).  Numerous courts in the Second Circuit have held that the ADA and Rehabilitation Act do not provide for liability against individual defendants in their official capacities.  *See, e.g.*, *Keitt v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 11-CV-855, 2015 WL 2383687, at *21 (W.D.N.Y. May 19, 2015) ("Courts have held that . . . individuals [cannot] be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities."); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 302 n.10 (S.D.N.Y. 2010) ("[I]ndividuals cannot be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities." (internal quotation marks omitted)); *Carrasquillo v. City of N.Y.*, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) ("Individuals cannot be

named as defendants in ADA suits in either their official or representative capacities.").[8]  Yet, others have reached the contrary conclusion, *see, e.g.*, *Keitt*, 882 F. Supp. 2d at 456–57 (explaining that official capacity suits under the ADA or Rehabilitation Act can proceed in the absence of Eleventh Amendment immunity); *Cole v. Goord*, No. 05-CV-2902, 2009 WL 2601369, at *4–5 (S.D.N.Y. Aug. 25, 2009) (finding that individuals can be sued for damages in their official capacities under the ADA because "the suit addresses the office—a 'public entity'—not the officer personally"), in light of the Second Circuit's decision in *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), which held that an individual sued for injunctive relief in his or her official capacity is effectively a "public entity" subject to liability under the ADA because the government is the real party in interest in an official capacity suit, *see id.* at 288.

Nonetheless, even under this latter school of thought, any official capacity claims against Defendants would fail.  The Second Circuit has held that an ADA claim for damages against a state (or state agency or official) is not barred by the Eleventh Amendment "if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due

---

[8] While many of these courts espouse this principle without any further discussion, *see, e.g.*, *Maus*, 688 F. Supp. 2d at 302 n.10; *Carrasquillo*, 324 F. Supp. 2d at 441, some provide varying explanations for the conclusion that ADA or Rehabilitation Act suits cannot be brought against individuals in their official capacities, *see, e.g.*, *Harrington v. Vadlamudi*, No. 13-CV-795, 2014 WL 4829483, at *4 (N.D.N.Y. Sept. 29, 2014) (explaining that individuals sued in their official capacities under the ADA or Rehabilitation Act are "immune from a suit for damages because, pursuant to the Eleventh Amendment of the United States Constitution, state officials are not liable for money damages when sued in their official capacities"); *Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 199–200 (S.D.N.Y. 2000) (concluding that the ADA and Rehabilitation Act do not provide for official capacity suits because the statutory language prohibits "discrimination by a '*public entity*,'" which, "as it is defined in the statute[s], does not include individuals" (emphasis added) (internal quotation marks omitted)); *Candelaria v. Cunningham*, No. 98-CV-6273, 2000 WL 798636, at *3 (S.D.N.Y. June 20, 2000) (explaining that "there is no need for official capacity litigation when an individual can sue a government entity directly," as is the case under both the ADA and Rehabilitation Act (citing *Kilcullen v. N.Y. State Dep't of Labor*, 205 F.3d 77, 82 (2d Cir. 2000))).

9

to disability." *Garcia*, 280 F.3d at 112; *accord Johnson v. Goord*, No. 01-CV-9587, 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004) (dismissing official capacity claims "under [§] 504 of the Rehabilitation Act and Title II of the ADA . . . because those laws do not provide for money damages against the state or state officials in their official capacities, absent a showing that any violation was motivated by discriminatory animus or ill will due to the disability" (citing, inter alia, *Garcia*, 280 F.3d at 108, 111–12)).  Here, the Complaint does not allege that Defendants acted with discriminatory animus or ill will based on Plaintiff's visual impairment.  (*See generally* Compl.)  Thus, even if Plaintiff could bring ADA or Rehabilitation Act claims for monetary damages against Cunningham and Bennett in their official capacities, such claims would fail in the absence of anything other than conclusory allegations.  *See Chambers v. Wright*, No. 05-CV-9915, 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007) (dismissing ADA and Rehabilitation Act claims where the "[p]laintiff d[id] not make any allegations concerning [the] [d]efendants' discriminatory animus or ill will"); *Renelique v. Goord*, No. 03-CV-525, 2006 WL 2265399, at *11 (N.D.N.Y. Aug. 7, 2006) (dismissing official capacity claims under the ADA where the plaintiff did "not allege[] any facts that would support a conclusion that [the] [d]efendants acted with discriminatory animus or ill will toward him").[9]

---

[9] To state a claim under either the ADA or Rehabilitation Act, Plaintiff would also need to allege that he is a qualified individual with a disability and was denied services *because of* his disability.  *See Shomo v. City of N.Y.*, 579 F.3d 176, 185 (2d Cir. 2009) (explaining that to state a claim under Title II or the Rehabilitation Act, a plaintiff must allege, inter alia, that he "is a qualified individual with a disability" who "was denied the opportunity to participate in or benefit from [the] defendants' services, programs, or activities, or was otherwise discriminated against by [the] defendants, by reason of [his] disabilit[y]" (alterations and internal quotation marks omitted)).

### 2.  Title III of the ADA

Defendants further contend that Plaintiff cannot sue Defendants under Title III of the ADA, (*see* Defs.' Mem. 12), which prohibits discrimination by private entities in "place[s] of public accommodation," 42 U.S.C. § 12182.  By its terms, the statute only applies to places of "public accommodation," which do not include state prisons, *see id.* § 12181(7) (listing specific "entities [that] are considered public accommodations"); *accord York v. Beard*, No. 14-CV-1234, 2015 WL 3488217, at *2 (E.D. Cal. June 2, 2015) (dismissing Title III claim against prison staff "as a matter of law" because "state prisons are not places of public accommodation"), *adopted by* 2015 WL 4557437 (E.D. Cal. July 27, 2015), and *reconsideration denied*, 2015 WL 5882683 (E.D. Cal. Oct. 5, 2015); *Collazo v. Corr. Corp. of Am.*, No. 11-CV-1424, 2011 WL 6012425, at *4 (N.D. Ohio Nov. 30, 2011) (dismissing Title III claim because "[a] jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions"); *Edison v. Douberley*, No. 05-CV-307, 2008 WL 4194813, at *4 (M.D. Fla. Sept. 9, 2008) (finding that a state correctional facility did not constitute a "place of public accommodation" under Title III (internal quotation marks omitted)), *aff'd*, 604 F.3d 1307 (11th Cir. 2010).[10]  Therefore, because Title III does not cover Woodbourne or its employees, any such claims against Defendants must be dismissed.

---

[10] Title III defines the following private entities as "public accommodations," to the extent that "the operations of such entities affect commerce":

(a) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (b) a restaurant, bar, or other establishment serving food or drink; (c) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; (d) an auditorium, convention center, lecture hall, or other place of public gathering; (e) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (f) a laundromat, dry-

III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion without prejudice.
Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this
Order, addressing the deficiencies outlined herein. He is advised that an amended complaint
replaces the Complaint currently pending before the Court in its entirety and therefore must
include all of his claims and factual allegations against all Defendants against whom he wishes to
proceed. The amended complaint must be captioned "First Amended Complaint" and bear the
same docket number as this Order. Failure to meet this deadline could result in the dismissal of
this case.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No.
15.)

SO ORDERED.

Dated:      June 17, 2016
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

_____

cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral
parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office,
professional office of a health care provider, hospital, or other service
establishment; (g) a terminal, depot, or other station used for specified public
transportation; (h) a museum, library, gallery, or other place of public display or
collection; (i) a park, zoo, amusement park, or other place of recreation; (j) a
nursery, elementary, secondary, undergraduate, or postgraduate private school, or
other place of education; (k) a day care center, senior citizen center, homeless
shelter, food bank, adoption agency, or other social service center establishment;
and (l) a gymnasium, health spa, bowling alley, golf course, or other place of
exercise or recreation.

42 U.S.C. § 12181(7).

12